UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
:
CITY OF AUSTIN POLICE RETIREMENT SYSTEM,                      :
*Individually and on Behalf of All Others Similarly*         :
*Situated*,                                                  :                    12 Civ. 1203 (PAE)
:
                                          Plaintiff,         :                    OPINION & ORDER
                             -v-                             :
:
KINROSS GOLD CORPORATION, TYE W. BURT,                       :
PAUL H. BARRY, GLEN MASTERMAN, and                           :
KENNETH G. THOMAS,                                           :
:
                                          Defendants.        :
:
----------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

On March 22, 2013, the Court issued an opinion granting in part and denying in part

defendants' motion to dismiss the Amended Complaint. *See* No. 12 Civ. 1203 (PAE), Dkt. 58,

*available at* 2013 WL 1174017 (S.D.N.Y. Mar. 22, 2013) (the "March 22 Opinion" or "Op.").

Defendants Kinross Gold Corporation ("Kinross" or the "Company") and four individual

Kinross officers move for reconsideration of that holding, on several grounds.  For the reasons

that follow, Defendants' motion for reconsideration is denied.

**I.      Legal Standard for Reconsideration**

The standard governing motions for reconsideration under S.D.N.Y. Local Civil Rule 6.3

"is strict, and reconsideration will generally be denied unless the moving party can point to

controlling decisions or data that the court overlooked—matters, in other words, that might

reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*

*Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Nakshin v. Holder*, 360 F. App'x 192, 193 (2d

Cir. 2010) ("The threshold for prevailing on a motion for reconsideration is high.").  The purpose

of Rule 6.3 is to "'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" *Naiman v. N.Y. Univ. Hosps. Ctr.*, No. 95 Civ. 6469 (RPP), 2005 WL 926904, at *1 (S.D.N.Y. Apr. 21, 2005) (quoting *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)).

Such a motion is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005); *see also Goonan v. Fed. Reserve Bank of N.Y.*, No. 12 Civ. 3859 (JPO), 2013 WL 1386933, at *2 (S.D.N.Y. Apr. 5, 2013) ("Simply put, courts do not tolerate such efforts to obtain a second bite at the apple."). On a Local Rule 6.3 motion, "a party may not advance new facts, issues, or arguments, not previously presented to the Court." *Polsby v. St. Martin's Press*, No. 97 Civ. 690 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan.18, 2000) (Mukasey, J.) (citation omitted). Generally, district courts will only amend or alter a judgment "to correct a clear error of law or prevent manifest injustice." *In re Assicurazioni Generali, S.P.A.*, 592 F.3d 113, 120 (2d Cir. 2010).

## II.    Application

Familiarity with the March 22 Opinion is assumed. In seeking reconsideration, defendants argue that the Court (1) applied a "recklessness" standard, not an "actual knowledge" standard, in judging the allegations of scienter; (2) incorrectly assumed that no construction or planning activity was occurring at the Tasiast mine during the feasibility study; (3) did not properly apply the decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), to plaintiffs' claims regarding the period after August 10, 2011, which claims the Court

sustained; and (4) did not discuss or properly apply *Janus Capital Group., Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011).

### A.    Standard of Scienter

Defendants first assert that in its analysis of the claims regarding Kinross's statements on or after August 10, 2011, "the Court did not require that Lead Plaintiff plead actual knowledge to establish Messrs. Burt's and Thomas's scienter." Kinross Br. 6. Instead, defendants argue, the Court incorrectly applied a lower standard of recklessness.

Defendants are wrong, and the Court declines to reconsider its conclusions on this point. Although the Court's opinion at points utilized the term "recklessness" to describe the required showing of scienter, the Court accurately articulated—and applied—the pleading standard as to the scienter with which forward-looking statements were made:

> As to scienter, the same principles reviewed earlier apply:  Scienter may be found based on a finding that the statement was made with recklessness.  However, unlike statements about historical facts, in which the scienter inquiry focuses on whether the defendants "knew facts or had access to information suggesting that their public statements were not accurate" or "failed to check information they had a duty to monitor," [*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 199 (2d Cir. 2009)], the recklessness inquiry as to forward-looking projections focuses on whether the defendants knew at the time they made these projections that they were unrealistic or unlikely to come true.  Kinross's announced schedule reflects its judgment or opinion, and "[t]he *sine qua non* of a securities fraud claim based on false opinion is that defendants deliberately misrepresented a truly held opinion." *Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 153–54 (S.D.N.Y. 2004) (citing *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095–96 (1991)).

Op. 35 (emphasis added).  The Court thus defined the pertinent inquiry as what the defendants knew at the time they made the projections about the Tasiast schedule.  The remainder of the Court's analysis confirms this. *See, e.g.*, Op. 31 (collecting cases); Op. 36 ("[A] plaintiff must adequately allege that the prediction was not subjectively believed by the speaker *when stated . . . .*").

This standard was the correct one. The Second Circuit has held that "[s]tatements regarding projections of future performance may be actionable . . . if they are worded as guarantees or are supported by specific statements of fact, or if the speaker does not genuinely or reasonably believe them." *In re Int'l Bus. Machs. Corp. Sec. Litig.* ("*In re IBM*"), 163 F.3d 102, 107 (2d Cir. 1998) (citations omitted). Applying that standard, the Court concluded that "Austin has alleged adequately that Kinross, as of August 2011, *knew or had to appreciate* that the schedule it had announced a year earlier was no longer viable. It has adequately pled that Kinross's failure to update or revise the schedule between then and January 2012 was reckless." Op. 47–48 (emphasis added). The same concept may equally be expressed as follows: "Austin has adequately pled that Kinross's failure to update or revise the schedule between then and January 2012 was made with actual knowledge that that schedule was no longer viable."

Defendants also fault the Court for not taking into account cautionary language made at the time of defendants' August 10, 2011 and November 2, 2011 statements—language which defendants did not reference or rely upon in their initial briefs. But the Court expressly stated in its decision that it was not relying on the absence of cautionary language:

> [E]ven if there had been such cautionary language, Austin has alleged sufficient facts to show that defendants had to appreciate by August 2011 that a material delay of the prior schedule for construction and production was likely, and that that schedule was no longer realistic. And it is well-settled that cautionary language cannot protect against the "omission of present fact." [*Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 142 (2d Cir. 2010)]; *see also Slayton* [*v. Am. Express Co.*, 604 F.3d 758, 770 (2d Cir. 2010)] ("[C]autionary language that is misleading in light of historical fact cannot be meaningful. . . ."). "The law is well settled . . . that so-called 'half-truths'—literally true statements that create a materially misleading impression—will support claims for securities fraud." [*S.E.C. v. Gabelli*, 653 F.3d 49, 57 (2d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1216 (2013)].

Op. 42–43; *accord Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004) ("Cautionary words about future risk cannot insulate from liability the failure to disclose that the risk has [already] transpired.").

The Court has thoughtfully reassessed the adequacy of the allegations in the Amended Complaint as to scienter. The Court reaffirms, for the reasons stated in the March 22 Opinion, its determination that the Amended Complaint satisfactorily alleges scienter with respect to these statements. Further, the Court emphasizes, it also found Austin to have fairly alleged scienter on the basis of defendants' failure to correct the old schedule. Kinross had such a duty:

> By announcing such a schedule, Kinross made "the sort of definite positive projection[]" that the Second Circuit has found "'require[s] later correction' when intervening events render it misleading." [*Ill. State Bd. of Inv. v. Authentidate Holding Corp.*, 369 F. App'x 260, 264–65 & n.2 (2d Cir. 2010) (summary order)] (quoting [*In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993)]); *see also In re IBM*, 163 F.3d at 110 ("A duty to update may exist when a statement, reasonable at the time it is made, becomes misleading because of a subsequent event." (citation omitted)).

Op. 46–47. Based on the allegations in the Amended Complaint, Defendants' failure to correct the earlier schedule until January 2012—having appreciated since August 2011 that that schedule was no longer workable—supplies an alternative basis for the Court's holding as to scienter.

**B.     Timing of Construction Phase**

Defendants next assert that the March 22 Opinion tacitly "assumed that construction work was not occurring at Tasiast pending completion of the delayed feasibility study." Def. Br. 9. In fact, defendants argue, based on statements Kinross made in its 6-K public disclosures in May, August, and November 2011, the construction phase of the Tasiast development project was underway before the feasibility study had finished. Thus, defendants argue, it remained plausible that the earlier schedule could be met.

This claim is unpersuasive as a basis for reconsideration, for several independent reasons. First, in moving to dismiss, defendants did not rely on these statements. Nor did they assert that they refuted plaintiffs' claims that the August 10, 2011 and November 2, 2011 statements were actionable.

Second, the statements about construction in Kinross's Form 6-K disclosures may not be considered for the truth of the matters asserted therein. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (on a motion to dismiss, the Court may consider documents filed with the SEC, but "'only to determine *what* the documents stated,' and '*not to prove the truth of their contents*'" (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991))); *see also* Op. 13–14.

Third, even if considered for the truth of the matters asserted, the statements, on their faces, describe mere preparatory work at the site. *See, e.g.*, May 3, 2011 6-K ("In addition, a 500-bed camp for the initial phase of the expansion construction program is now out to tender."). These activities cannot be seriously claimed to neutralize the effect of the nine-month delay in the feasibility study announced in August 2011.

Fourth, Austin credibly alleged that the feasibility study and the construction phases were intended to occur sequentially, in stages:

> In its Amended Complaint, Austin has credibly explained that a feasibility study provides a foundation for a company's later construction work. Austin cites from a report on mining project development by IPA, "the preeminent mining consultant in project evaluation," *see* Am. Compl. ¶¶ 67–77, to the effect that, in the mining industry, the feasibility study stage is when engineering plans are developed, for later implementation during the construction (or "execution") phase. *Id.* ¶¶ 69, 72–73. In other words, the feasibility study stage necessarily precedes, and is a predicate to, the construction stage.

Op. 43. The disclosures to which defendants now point, even if considered for the truth of the matter asserted, would not change this conclusion. At most they would indicate that certain

preparatory activities as to the construction phase could occur concurrently with the feasibility study.

   C.   *Tellabs* **Analysis**

   Defendants next argue that the Court failed to properly perform the *Tellabs* competing inferences analysis, which requires that the Court find the inference that a defendant acted with scienter "cogent and at least as compelling as any opposing inference."  551 U.S. at 323. Defendants argue that the Court did not give sufficient attention to the competing inference that "Messrs. Burt and Thomas were, in retrospect, simply overoptimistic in expressing their opinions about the timeline of the Tasiast mine expansion."  Def. Br. 14.

   This request for reconsideration seeks to revive an argument that the Court has already considered, addressed, and rejected.  As the March 22 Opinion stated, the Court concluded that defendants knew that the schedule announced earlier could no longer be met.  Although the point was not expressly stated as such, the Court considered and rejected as implausible the asserted competing inference that defendants were merely naïvely overenthusiastic about the timetable they had set, so as to regard a nine-month delay in the feasibility study as not apt to delay the already-ambitious construction schedule.  *See Ferrand v. Credit Lyonnais*, 292 F. Supp. 2d 518, 521–22 (S.D.N.Y. 2003) ("That the Court did not specifically reference every factual detail or incident . . . does not necessarily establish that the Court did not consider that particular matter.").  The March 22 Opinion makes that determination evident.  *See* Op. 47 (noting "Austin's showing that, based on the facts known to Kinross as of August 2011, the earlier schedule had become illusory"); *id.* at 47–48 ("Thus, . . . Austin has alleged adequately that Kinross, as of August 2011, knew or had to appreciate that the schedule it had announced a year

earlier was no longer viable.").  There is no basis for the Court to reconsider its conclusion, where defendants merely take issue with the Court's ruling.

### D.    Individual Defendants Under *Janus*

Defendants next fault the Court for not considering *Janus Capital Group., Inc. v. First Derivative Traders*, in which the Supreme Court held that "[f]or purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."  131 S. Ct. at 2302.  They argue that had the Court applied *Janus*, it would have dismissed the claims against defendants Barry and Masterman.

Defendants, however, have waived this argument.  They did not address or even cite *Janus* in their initial submissions.  Nor did they brief the issue of individual responsibility for Kinross's statements.  (Control person liability under § 20(a) was relegated to a single footnote, and primary liability went undiscussed.  *See* Dkt. 39, at 40 n.7.)  Because defendants could have raised this argument in moving to dismiss but did not do so, they may not do so here.  "[A] party is barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so." *Associated Press*, 395 F. Supp. 2d at 20; *see also Horvath v. Deutsche Lufthansa, AG*, No. 02 Civ. 3269 (PKC), 2004 WL 241671, at *2 (S.D.N.Y. Feb. 9, 2004).  Defendants will be at liberty, at summary judgment, to challenge the claims against defendants Barry and Masterman, based on the principles of *Janus.*  Defendants' contention appears to be a substantial one,[1] and

---

[1] Although, the Court notes, an unsettled one in this district.  *Compare City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 374–75 (S.D.N.Y. 2012) (*Janus* "has no bearing on how corporate officers who work together in the same entity can be held jointly responsible on a theory of primary liability"), *with In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 165 (S.D.N.Y. 2012) (holding that defendant is "not responsible for

the Court will welcome thorough briefing on it at that point, as well as on the *PIMCO-Scholastic* issue the Court identified in its Opinion. *See* Op. 50–51.[2]

## CONCLUSION

For the reasons stated above, the Court denies defendants' motion for reconsideration in its entirety.

Defendants are directed to answer the Amended Complaint within 30 days, as provided in the stipulation and order of April 8, 2013. *See* Dkt. 62. The Court has separately issued a case management plan today.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: June 6, 2013
      New York, New York

---

misleading statements in SEC filings he did not sign," because "nothing in the Court's decision in *Janus* limits the key holding . . . to legally separate entities" (citation omitted) (alteration in original)).

[2] Defendants do correctly point out that "Messrs. Barry and Masterman cannot be held liable for Messrs. Burt's and Thomas's *oral* statements in August and November 2011." Def. Reply Br. 10 (emphasis added) (citing *City of Pontiac Gen. Emps.' Ret. Sys.*, 875 F. Supp. 2d at 375).